**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **ANDREW WOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:25-00735** |
| | ) | |
| **WARDEN MESSENGER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

On December 15, 2025 Plaintiff, acting *pro se*, filed a "Verified Complaint" for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 2.) Plaintiff names Warden Messenger as the sole Defendant. (<u>Id.</u>) Plaintiff alleges that Defendant has violated his due process and equal protection rights under the Fifth Amendment and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. (<u>Id.</u>) Plaintiff alleges that he has been diagnosed as being "poly-substance abuse dependent." (<u>Id.</u>) Since Plaintiff is "poly-substance abuse dependent," Plaintiff states that he "has been screened and approved by the BOP's Psychology Services and Health Services Department to be placed on the Medication Assisted Treatment ("MAT") Program." (<u>Id.</u>) Plaintiff explains that "[p]atients on the MAT Program are prescribed to receive daily doses of the opioid-blocker medication Suboxone." (<u>Id.</u>) Plaintiff, however, contends that "Defendant refuses to allow Plaintiff to be given the Suboxone because Plaintiff has too much time remaining to serve on his

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

sentence." (Id.) Plaintiff, however, claims that "[o]ther FCI Beckley inmates who have more time to serve than Plaintiff and/or who have less of a clinically-indicated need for MAT are currently being given Suboxone." (Id.) Plaintiff states that "Defendant's refusal to allow the Plaintiff to receive Suboxone has caused, and continues to cause, Plaintiff needlessly to suffer excessively and emotional distress and anguish." (Id.) Plaintiff requests monetary and injunctive relief. (Id.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct.

2

285, 50 L.Ed.2d 251 (1976); <u>Loe v. Armistead</u>, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." <u>Miller v. Jack</u>, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller v. Department of Social Servs.</u>, 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see <u>Goode v. Central Va. Legal Aide Society, Inc.</u>, 807 F.3d 619 (4th Cir. 2015).

## <u>DISCUSSION</u>

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting

from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reingold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

> 1.      **Equal Protection and Due Process Claim:**

As stated above, a <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens</u>, 403 U.S. at 395 -97, 91 S.Ct. at 1999. <u>Bivens</u> core premise is to deter individual officers' unconstitutional acts. <u>Correctional Services Corp v. Malesko</u>, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend <u>Bivens</u> to confer a right of action for damages against private entities acting under the color of federal law). In <u>Bivens</u>, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. <u>Bivens</u>, 403 U.S. at 396, 91 S.Ct. 1999; <u>Hernandez v. Mesa</u>, 589 U.S. 93, 140 S.Ct. 735, 741, 206 L.Ed.2d 29 (2020)(In *Bivens*, "the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents.") In the years following

the decision in Bivens, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment for a claim of sex discrimination, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment for a prisoner's claim of inadequate medical care, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens liability to any new context or new category of defendants. See Goldey v. Fields, 606 U.S. 942, 944-45, 145 S.Ct. 2613, 2615, ___ L.Ed.2d ___ (2025)(noting that the Supreme Court "[f]or the past 45 years, has consistently declined to extend *Bivens* to new contexts and declining to extend *Bivens* to plaintiff's Eighth Amendment claim of excessive force); Egbert v. Boule, 596 U.S. 482, 486, 142 S.Ct. 1793, 1799-80, 213 L.Ed.2d 54 (2022)(noting that the Supreme Court has declined 11 different time to imply similar causes of actions in the years since *Bivens* was decided); FDIC v. Meyer, 510 U.S. at 484-86, 114 S.Ct. 996(declined to extend Bivens to permit suit against a federal agency); also see Bulger v. Hurwitz, 62 F.4th 127, 138 (4th Cir. March 3, 2023)(rejecting request to extend *Bivens* to a prisoner's Eighth Amendment failure to protect and intervene claims against BOP officials); Dyer v. Smith, 56 F.4th 271, 275 (4th Cir. 2022)(declining request to extend *Bivens* to claims against Transportation and Security Administration officers for violations of the First and Fourth Amendments); Tate v. Harmon, 54 F.4th 839, 841-42 (4th Cir. 2022)(rejecting request to extend *Bivens* to conditions of confinement claim under the Eighth Amendment); Annappareddy v. Pascale, 996 F.3d 120, 126 (4th Cir. 2021)(declining to extend *Bivens* to claims against federal prosecutors and investigators for violations of the Fourth and Fifth Amendments); Earle v. Shreves, 990 F.3d 774, 776 (4th Cir. 2021)(rejecting request to extend *Bivens* to claims of

5

unlawful retaliation by prison officials for filing grievances in violation of the First Amendment); Tun-Cos v. Perrotte, 922 F.3d 514, 517-18 (4th Cir. 2019)(declining to extend *Bivens* to claims of unlawful searches and seizures by Immigration and Customs Enforcement agents in violation of the Fourth and Fifth Amendments); Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend *Bivens* to an Eighth Amendment claim against employees of a privately operated prison); Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir. 2012)(declining to extend *Bivens* in a military context). In 2017, the Supreme Court made clear the very limited scope of Bivens actions and that "expanding the Bivens remedy is now a disfavored judicial activity." Ziglar v. Abbasi, 582 U.S. 120, 134, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted Bivens claim is not one of the three Bivens-type actions previously recognized by the Supreme Court, closer scrutiny is required. Id. More recently, the Supreme Court in Egbert noted "[n]ow long past the heady days in which this Court assumed common-law powers to create causes of action [such as Bivens], we have come to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." Egbert, 596 U.S. at 490, 142 S.Ct. at 1802(internal citations omitted). The Supreme Court stated that "[i]n both statutory and constitutional cases, our watchword is caution." Hernandez, 589 U.S. at 100, 140 S.Ct. at 742; Tate, 54 F.4th at 844(stating that the Supreme Court's "recent admonitions are clear: '[T]he Judiciary's authority to [create a cause of action under the Constitution] is, at best, uncertain,' . . . ; courts must beware of 'arrogating legislative power'. . .; and 'our watchword is caution,'. . .")(internal citations omitted). The Supreme Court explained that "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress, . . . and no statute expressly creates a *Bivens* remedy." Hernandez, 589 U.S. at 100, 140 S.Ct. at

6

742; also see Egbert, 596 U.S. at 502, 142 S.Ct. at 1809("[M]ore recently, we have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.")

Although the Supreme Court called into doubt the validity of the "implied rights" in Bivens, the Supreme Court did not overturn Bivens. Id. The Supreme Court, however, "impose[d] a highly restrictive analysis for Bivens cases by (1) narrowing the precedential scope of Bivens, Davis, and Carlson and (2) imposing a broad standard of criteria that, if satisfied, require courts to reject any expansion of Bivens remedies." Tate, 54 F.4th at 844. The Supreme Court explained that when asked to extend Bivens, a Court should engage in a two-step inquiry. Hernandez, 489 U.S. at 101, 140 S.Ct. at 743. First, the Court should inquire "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" Id.(citation omitted). The Supreme Court clarified that its "understanding of a 'new context' is broad," thereby requiring the scope of the exiting Bivens causes of action to be narrowly construed. Id. Second, if a claim is found to arise in a new context, the Court should inquire "whether there are any 'specific factors [that] counsel hesitation' about granting the extension." Id.(quoting Abbasi, 582 U.S. at 135, 137 S.Ct. at 1857); also see Greenpoint Tactical Income Fund LLC v. Pettigrew, 38 F.4th 555, 561 (7th Cir. 2022)(The two-part test used post-*Abbasi* to evaluate claims under *Bivens* remains the same after *Egbert*); Feao v. Ponce, 2023 WL 3213553 (C.D.Cal. March 3, 2023)(Although *Egbert* indicates that existence of "special factors" can itself create a new context, the court rejected defendants' argument that *Egbert* had the effect of collapsing the inquiry altogether and dispensing with the "next context" inquiry).

In Abbasi, the Supreme Court set out a framework for determining whether a claim

presents a "new <u>Bivens</u> context." <u>Abbasi</u>, 582 U.S. at 140, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a <u>Bivens</u> remedy in only three cases: (1) A Fourth Amendment claim against agents of the Federal Bureau of Narcotics for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a Congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. <u>Id.</u> at 1854-55(citations omitted). The <u>Abbasi</u> Court explained that "[i]f the case is different in a meaningful way from previous <u>Bivens</u> cases decided by this Court, then the context is new." <u>Id.</u> at 1859. Although the <u>Abbasi</u> Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

<u>Id.</u> at 1859-60. In <u>Tate</u>, the Fourth Circuit recognized that a single fact distinguishing a case from <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>, potentially can create a "new context." <u>Tate</u>, 54 F.4th at 846.

Liberally construing Plaintiff's Complaint, Plaintiff alleges that Defendant violated his right to due process and equal protection under the Fifth Amendment. (Document No. 2.) The undersigned first considers whether Plaintiff's above claims under the Fifth Amendment constitute an improper extension of <u>Bivens</u>. As to the Fifth Amendment, the undersigned

8

acknowledges that <u>Davis</u> involved the Fifth Amendment. <u>Davis</u>, however, involved a claim of sex discrimination involving the equal protection component of the Fifth Amendment Due Process Clause against a Congressman for unlawful employment termination. <u>Davis</u>, 442 U.S. at 248-49, 99 S.Ct. 2264(Plaintiff was a congressional employee who was permitted to sue a Congressman for unlawful employment termination in violation of the Fifth Amendment's Due Process Clause.) Based upon a review of the Fourth Circuit's decision in <u>Mays v. Smith</u>, the undersigned finds that Plaintiff's due process and equal protection claims under the Fifth Amendment arise in a new context. In <u>Mays</u>, the Fourth Circuit explained "[t]he only Fifth Amendment-based <u>Bivens</u> claim that the Supreme Court has recognized was the one in <u>Davis</u>, which concerned alleged sex discrimination on Capitol Hill." <u>Mays v. Smith</u>, 70 F.4th 198, 203 (4th Cir. 2023)(internal quotation marks omitted). The Fourth Circuit further recognized that the Supreme Court has never authorized a <u>Bivens</u> claim for due process violations. <u>Id.</u>; <u>also see</u> <u>Tun-Cos</u>, 922 F.3d at 517-18(declining to extend *Bivens* to claims of unlawful searches and seizures by Immigration and Customs Enforcement agents in violation of the Fourth and Fifth Amendments); <u>Annappareddy</u>, 996 F.3d at 134(declining to extend *Bivens* to Fifth Amendment due process claims); <u>Nasiruddin v. Pliler</u>, 2024 WL 2262664, * 10 (S.D.N.Y. May 17, 2024)(noting that "courts in other circuits have held that Fifth Amendment claims concerning property damage or destruction are 'meaningfully different from the Bivens trilogy and clearly present new *Bivens* contexts'")(collecting cases); <u>Barrett v. Ciolli</u>, 2023 WL 3571951, * 6 (E.D.Cal. May 19, 2023)("Plaintiff's Fifth Amendment claim for deprivation of property alleges that prison officials confiscated Plaintiff's personal property without providing due process" presents a new <u>Bivens</u> context); <u>Murphy v. Inmate Systems Management, Inc.</u>, 2008 WL

9

793631, * 9 (S.D.W.Va. March 20, 2008)(The Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment Due Process violation for the withholding of inmate property, so long as there is an adequate post-deprivation remedy."); Hildago v. Federal Bureau of Prisons, 2014 WL 37050, * 4 (S.D.W.Va. Jan. 6, 2014)(finding that due process was not implicated respecting an inmate's claim of intentional deprivation of property where the inmate had meaningful post-deprivation remedies); Louis-El v. Ebbert, 448 F.Supp.3d 428, 439 (M.D.Penn. March 24, 2020)("[T]he Supreme Court has never recognized a *Bivens* remedy for a Fifth Amendment Due Process violation for the withholding of prisoner property."); Tate v. Harmon, 2020 WL 7212578, * 5 (W.D.Va. Dec. 7, 2020)(finding prisoner's Fifth Amendment violation of due process claim regarding the deprivation of property was a new context). Similar to Mays, Plaintiff's Fifth Amendment claims "are brough against a 'new category of defendants' – prison officials, as opposed to a former Congressman in Davis – operating in a different legal and factual context (prison ligation)." Mays, 70 F.4th at 203(quoting Tate, 54 F.4th at 846). The mere fact that Davis involved the same constitutional provision is "insufficiently granular for the new-context inquiry.") Id. at 202("[C]itation to the constitutional provision alone is insufficiently granular for the new-context inquiry.") Additionally, the Supreme Court has made it clear that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez, 489 U.S. at 101, 140 S.Ct. at 743. Based upon the foregoing, the undersigned finds that Plaintiff's due process and equal protection claims under the Fifth Amendment clearly present a new context.

Next, the Court must determine whether Bivens should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting

the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." Wilkie, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." Abbasi, 582 U.S. at 148, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new Bivens remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. The undersigned first finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program.[2] The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. Second, Congress through the Inspector General Act of 1978 authorized the Department's Inspector General to investigate allegations of criminal wrongdoing or administrative misconduct by Department of Justice employees. See 5 U.S.C. App. 3 § 8E(d); also see Egbert, 596 U.S. at 498, 142 S.Ct. at 1807(finding that if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy"); Abbasi, 582 U.S. at 144, 137 S.Ct. at 1862. Finally, Plaintiff had other alternative remedies such as the following: (1) Seeking injunctive relief pursuant to 18 U.S.C. § 3626(a)(2) for any ongoing constitutional violations; (2) Filing a claim pursuant to 31 U.S.C. § 3723, which allows claims up to $1,000 to be presented to the agency for redress of damages caused by a federal officer's negligence; and (3) Filing a claim pursuant to the Federal Tort

---

[2] In *Goldey*, the Supreme Court rejected the Fourth Circuits finding that there were no special factors counseling against providing a judicial remedy where there were allegations that rogue officers thwarted the inmate's access to alternative remedies, such as the administrative remedy program.

11

Claims Act, which authorizes claims for damages against the United States for certain intentional torts committed by federal officers.[3] See Millbrook v. United States, 569 U.S. 50, 54 – 57, 133 S.Ct. 1441, 185 L.Ed2d 531 (2013); Minneci v. Pollard, 565 U.S. 118, 127-30, 132 S.Ct. 617, 181 L.Ed.2d. 606 (2012); Borowski v. Baird, 2018 WL 6583976, * 2 (S.D.Ill. Dec. 14, 2018), aff'd, 772 Fed.Appx. 338 (7th Cir. 2019); White v. Sloop, 2018 WL 6977336, * 3 (S.D.Ill. Aug. 31, 2018); also see Chilicky, 487 U.S. at 425-27, 108 S.Ct. 2460(As long as the plaintiff had an avenue for some redress, the bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability); Malesko, 534 U.S. at 74, 122 S.Ct. at 523(stating that "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, the undersigned finds that Plaintiff had alternative

---

[3] An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA, however, does not create a new cause of action. *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.* Thus, the FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. *See* 28 U.S.C. § 2675(a); *also see Bellomy v. United States*, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994)(*citing Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *Muth v. United States*, 1 F.3d 246 (4th Cir. 1993); *Gibbs v. United States*, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency. *See Plyer v. United States*, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). The Fourth Circuit has also recognized that "[a]n administrative claim must be properly presented." *Kokotis v. United States Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000). In the above action, there is no allegation or indication that Plaintiff satisfied the requirement of presenting an administrative claim for a sum certain to the proper agency.

remedies available to address his allegations of due process and equal protection claims under the Fifth Amendment.

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 582 U.S. at 136, 137 S.Ct. at 1857(quoting Carlson, 446 U.S at 18, 100 S.Ct. 1468); also see Goldey, 606 U.S. at 944, 145 S.Ct. at 2615(finding "special factors counsel against recognizing an implied *Bivens* cause of action for Eighth Amendment excessive-force violations."). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. Similar to Egbert and Tate, the undersigned finds there is certainly at least one "rational reason" why Congress would be better equipped that the courts to determine whether to allow such claims. First, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Abbasi, 582 U.S. at 148, 137 S.Ct. at 1865; also see Egbert, 596 U.S. at 493-94, 142 S.Ct. at 1804 (The political branches are indeed better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.). The Abassi Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other

types of prisoner mistreatment." Id. The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

Id. The PLRA's exhaustion requirement clearly applies to Bivens actions. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." Jones v. Bock, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted); also see Earle, 990 F.3d at 781("[T]he recognition of a *Bivens* remedy in this case would work a significant intrusion into the area of prison management that demands quick response and flexibility, and it could expose prison officials to an influx of manufactured claims.") The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner, 482 U.S. at 84, 107 S.Ct. at 2259. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259; also see Earle, 990 F.3d at 781("Under these circumstances, we believe that Congress, not the Judiciary, is in the best

14

position to 'weigh the costs and benefits of allowing a damage action to proceed."). Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding <u>Bivens</u> to Plaintiff's due process and equal protection claims under the Fifth Amendment. <u>Barrett</u>, 2023 WL 3571951 at * 7(finding at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing *Bivens* damages action to proceed" concerning Plaintiff's confiscation of property claim); <u>Louis-El</u>, 448 F.Supp.3d at 440-41(finding special factors counseled against extending *Bivens* to Plaintiff's Fifth Amendment due process claim); <u>Tate</u>, 2020 WL 7212578 at * 6 (finding special factors counseled against extending *Bivens* to Plaintiff's First, Fifth, and Eighth Amendment claims); <u>Reid</u>, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim); <u>Gehrke</u>, 2018 WL 1334936 at * 4(same); <u>Gonzalez</u>, 269 F.Supp.3d at 61(same).

Furthermore, the <u>Abbasi</u> Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." <u>Abbasi</u>, 582 U.S. at 136, 137 S.Ct. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." <u>Id.</u> The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." <u>Wilkie</u>, 551 U.S. at 562, 127 S.Ct. 2588(quoting <u>Bush</u>, 462 U.S at 389, 103 S.Ct. 2404).

In <u>Abbasi</u>, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

<u>Abbasi</u>, 582 U.S. at 134, 137 S.Ct. at 1856. The undersigned notes that expanding <u>Bivens</u> to allow due process and equal protection claims under the Fifth Amendment by inmates would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. As stated above, Congress recognized the need of reducing costs related to frivolous lawsuits by prisoners when it enacted the PLRA. Thus, the costs of defending such litigation against the need for damages as a remedy to protect a prisoner's rights must be balanced if <u>Bivens</u> liability is extended to due process and equal protection claims under the Fifth Amendment. This is exactly the type of activity that the Supreme Court determined in <u>Abbasi</u> is better left to the legislative branch. Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of <u>Bivens</u> to Plaintiff's due process and equal protection claims under the Fifth Amendment. <u>See</u> <u>Earle</u>, <u>supra</u>, 990 F.3d at 780-81. Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief can be granted concerning his Fifth Amendment claims.

    **2.      Deliberate Indifference Claim:**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include

those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321,

17

2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4ᵗʰ Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4ᵗʰ Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4ᵗʰ Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [her] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4ᵗʰ Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4ᵗʰ Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be

18

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that Defendant was aware of the excessive risk to Plaintiff's health or safety and Defendant disregarded that risk.

In his Complaint, Plaintiff alleges that Defendant acted with deliberate indifference to his health in violation of the Eighth Amendment by failing to adequately treat his "poly-substance abuse dependent" disorder. (Document No. 2.) Liberally construing Plaintiff's Complaint, the undersigned concludes that Plaintiff has alleged a facially plausible claim under the Eighth Amendment against Defendant.[4]

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint as his due process and equal protection claims under the Fifth Amendment; and **REFER** this matter back to the undersigned for further proceedings on Plaintiff's claim of deliberate indifference regarding his medical care under the Eighth Amendment.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States Chief District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this

---

[4] The undersigned acknowledges that the issue of whether a deliberate indifference claim concerning improper medical and dental care constitutes an improper extension of *Bivens* is currently pending before the Fourth Circuit. *See Mandriez Spivey v. Michael Breckson*, No. 24-6490 (4th Cir. January 30, 2025)(oral argument was held on

Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: March 4, 2026.



Omar J. Aboulhosn
United States Magistrate Judge

---

December 12, 2025).